**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

MICHAEL BARKER and GEORGE CROSS
on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

J.B. HUNT TRANSPORT SERVICES, INC.,

Defendant.

Case No. 5:26-cv-05128-DCF

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**SIRI & GLIMSTAD LLP**

Oren Faircloth (*pro hac vice*)
100 Pearl Street, 14th Floor – #16946876
Hartford, CT 06103
Tel: (212) 532-1091
E: ofaircloth@sirillp.com

William H. Payne, IV (*pro hac vice*)
8 Campus Drive, Suite 105 PMB #101
Parsippany, New Jersey 07054
Tel: (212) 532-1091
E: wpayne@sirillp.com

JENNINGS & EARLEY PLLC
Christopher D. Jennings
Arkansas Bar No. 2006306
500 President Clinton Avenue, Ste 110
Little Rock, Arkansas 72201
Tel: (501) 255-8569
E: chris@jefirm.com

*Attorneys for Plaintiffs and the Proposed Class*

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..... 2

III. THE SETTLEMENT NEGOTIATIONS AND AGREEMENT ..... 3

A. The Settlement Class ..... 4

B. Calculation of Class Member Payments and Distribution Timing ..... 4

C. Release and Covenant Not to Sue ..... 5

D. Independent Fiduciary Review ..... 6

E. Anticipated Notice Program ..... 6

F. Attorneys' Fees and Costs and Case Contribution Awards ..... 7

IV. ARGUMENT ..... 7

A. The Court Should Grant Preliminary Approval ..... 7

1. Legal Standard ..... 7

2. The Settlement Provides a Fair, Adequate, and Reasonable Result for the Settlement Class Members ..... 9

a. The Class Representatives and Class Counsel Have Adequately Represented the Class ..... 9

b. The Settlement Was Negotiated at Arm's Length ..... 10

c. The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Potential Appeals ..... 12

d. The Plan of Allocation and Method of Distribution Are Fair, Reasonable, and Equitable ..... 16

3. The Additional Fairness Factors Also Support Preliminary Approval ..... 17

a. The Merits of Plaintiffs' Claims Weighed Against the Settlement Favor Approval ..... 17

b. Defendant's Financial Condition Does Not Undermine the Settlement ..... 18

c. The Complexity, Risk, and Expense of Further Litigation Support Settlement ....................19

d. The Absence of Opposition Supports Preliminary Approval ........21

B. The Class Should Be Preliminarily Certified for Settlement Purposes ................21

1. The Settlement Class Satisfies Rule 23(a)'s Requirements......................21

a. Numerosity....................21

b. Commonality....................22

c. Typicality ....................23

d. Adequacy ....................25

2. The Settlement Class Meets the Requirements for Certification Under Rule 23(b) ....................26

a. The Settlement Class Should Be Certified Under Rule 23(b)(1) ....................26

C. The Proposed Notice Plan Should Be Approved....................27

D. The Court Should Schedule A Final Approval Hearing ....................30

V. CONCLUSION....................31

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................27

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994)....................22

*Baker v. 7-Eleven Inc.*,
No. 3:25-cv-01609, 2026 U.S. Dist. LEXIS 33855 (N.D. Tex. Feb. 19, 2026) ....................13

*Bennett v. Nucor Corp.*,
656 F.3d 802 (8th Cir. 2011) ....................22

*Bokma v. Performance Food Grp., Inc.*,
783 F. Supp. 3d 882 (E.D. Va. 2025) ....................13

*Caufield v. Colgate-Palmolive Co.*,
2017 U.S. Dist. LEXIS 118022 (S.D.N.Y. July 27, 2017) ....................26

*Chadwick v. State Farm Mut. Auto. Ins. Co.*,
No. 4:21-cv-1161-DPM, 2026 U.S. Dist. LEXIS 72008 (E.D. Ark. Mar. 27, 2026) ..........9, 11

*Cleveland v. Whirlpool Corp.*,
No. 20-cv-1906, 2022 U.S. Dist. LEXIS 111091 (D. Minn. June 22, 2022)....................11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................8

*Compton v. N. Cent. Va. Rests., Inc.*,
No. 5:20-cv-00073, 2022 U.S. Dist. LEXIS 159070 (W.D. Va. Sept. 2, 2022)....................14

*Cook v. Rockwell Int'l Corp.*,
151 F.R.D. 378 (D. Colo. 1993) ....................25

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ....................22, 23

*Ewing v. Pizza Czar, Inc.*,
No. 3:19-cv-00232-LPR, 2022 U.S. Dist. LEXIS 37063 (E.D. Ark. Mar. 2, 2022) ....................18

*Figas v. Wells Fargo*,
No. 08-cv-4546, Doc. No. 265 (D. Minn.) ....................15

*Fisher v. GardaWorld*,
No. 3:24-cv-00837, 2025 U.S. Dist. LEXIS 167251
(W.D.N.C. Aug. 27, 2025) ........ 13

*Franklin v. Duke Univ.*,
No. 1:23-CV-833, 2026 U.S. Dist. LEXIS 14532 (M.D.N.C. Jan. 27, 2026) ........ 15

*Gomez v. Centennial Bank*,
No. 4:23-cv-00333-LPR, 2025 U.S. Dist. LEXIS 145590
(E.D. Ark. July 30, 2025) ........ 22, 24

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ........ 30

*Hans v. Tharaldson*,
No. 3:05-cv-115, 2010 U.S. Dist. LEXIS 45927 (D.N.D. May 7, 2010) ........ 27

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ........ 27

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ........ 15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........ 14

*In re Medstar ERISA Litig.*,
No. 20-cv-1984, 2024 U.S. Dist. LEXIS 161002 (D. Md. Sept. 5, 2024) ........ 16

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ........ 13

*In re Moneygram Int'l, Inc. Sec. Litig.*,
No. 08-cv-883, Doc. 166 (D. Minn.) ........ 15

*In re Resideo Techs., Inc. Sec. Litig.*,
No. 19-cv-2863, 2022 U.S. Dist. LEXIS 53324 (D. Minn. Mar. 24, 2022) ........ 11

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ........ 15

*In re Schering Plough ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ........ 27

*In re Teflon Prod. Liab. Litig.*,
254 F.R.D. 354 (S.D. Iowa 2008) ........ 22

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
No. 16-cv-03698, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018)..........................15

*Kelly v. Johns Hopkins Univ.*,
No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ....................19

*Knight v. LHC Grp., Inc.*,
No. 6:25-cv-00263, ECF Nos. 52, 61 (W.D. La. Nov. 18, 2025)...........................................13

*Lipari-Williams v. Mo. Gaming Co.*,
339 F.R.D. 515 (W.D. Mo. 2021)...........................................................................13, 23

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...........................................................................................12

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ...............................................................................10, 16

*Martin v. Cargill, Inc.*,
295 F.R.D. 380 (D. Minn. 2013)...............................................................................8

*Masten v. Metro. Life Ins. Co.*,
No. 1:18-cv-11229 (S.D.N.Y.)...............................................................................13

*McAlister v. Metro. Life Ins. Co.*,
2023 U.S. Dist. LEXIS 158560 (S.D.N.Y. Sept. 7, 2023).....................................................26

*Mehlberg v. Compass Grp. USA, Inc.*,
No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025).........................13

*Milam v. Ark. Util. Prot. Servs., Inc.*,
No. 4:18-CV-00312 BSM, 2019 U.S. Dist. LEXIS 251098 (E.D. Ark. Feb. 15, 2019)......8, 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...........................................................................................28

*Noel v. Pepsico, Inc.*,
No. 24-cv-7516, 2026 U.S. Dist. LEXIS 41586 (S.D.N.Y. Feb. 27, 2026).......................13, 18

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)...........................................................................................27

*Paxton v. Union Nat'l Bank*,
688 F.2d 552 (8th Cir. 1982) ...............................................................21, 22, 23, 24

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ....................19

*Plesha v. Ascension Health All.*,
No. 4:24-cv-01459, 2026 U.S. Dist. LEXIS 22061 (E.D. Mo. Feb. 3, 2026) ....................13, 18

*Price v. Eaton Vance Corp.*,
No. 1:18-cv-12098, ECF No. 32 (D. Mass. May 6, 2019)....................15

*Ramos v. Banner Health*,
325 F.R.D. 382 (D. Colo. 2018) ....................19

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ....................22

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
No. 4:05-CV-01108 ERW, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ....................8

*Sec'y of Lab. v. Macy's, Inc.*,
No. 1:17-cv-541, 2021 U.S. Dist. LEXIS 221603 (S.D. Ohio Nov. 17, 2021) ....................13

*Sims v. BB&T Corp.*,
No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019)....................15

*Swinton v. SquareTrade, Inc.*,
No. 4:18-CV-00144, 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) ....................16

*Toomey v. Demoulas Super Markets, Inc.*,
No. 1:19-cv-11633, Dkt. 95 (D. Mass. Mar. 24, 2021) ....................15

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) ....................13

*Waggoner v. Carle Found.*,
No. 24-cv-2217, ECF 27 (C.D. Ill. Sept. 16, 2025)....................13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................8

*Williams v. Bally's Mgmt. Grp., LLC*,
No. 1:25-00147, 2025 U.S. Dist. LEXIS 217102 (D.R.I. Nov. 4, 2025)....................13, 17

*Wilson v. Whole Food Mkt., Inc.*,
No. 1:25-cv-00085-DAE, 2026 U.S. Dist. LEXIS 10099 (W.D. Tex. Jan. 19, 2026)....................13

**Statutes** **Page(s)**

29 U.S.C. § 1109 (ERISA § 409) ....................26

29 U.S.C. § 1132(a)(2), (a)(3) (ERISA § 502(a)(2), (a)(3)) ....................6, 26, 27

29 U.S.C. § 1182 (ERISA § 702) ....................9, 12, 26

42 U.S.C. § 300gg-4 (PHSA § 2705)....................9, 12, 26

**Rules** **Page(s)**

Fed. R. Civ. P. 23 .................... passim

**Regulations** **Page(s)**

29 C.F.R. § 2590.702(f) ....................12

45 C.F.R. § 146.121(f)(4)(v)....................13

## I. INTRODUCTION

Plaintiffs seek approval of a proposed $3,175,000 "common fund" class action settlement (the "Settlement" or "SA"). Plaintiffs commenced this putative class action alleging that Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA") by imposing a discriminatory tobacco surcharge on participants in the J.B. Hunt Transport, Inc. Employee Benefits Plan (the "Plan") without making available, or notifying participants of, a reasonable alternative standard that provides those who satisfy it with the full reward that nonsmokers receive, and by breaching its fiduciary duties in the design, administration, and use of the tobacco surcharge revenue. Defendant denies all allegations. After the filing of the Complaint on June 3, 2026, the Parties began engaging in good faith negotiations to resolve this case and scheduled a mediation for September 2, 2026, with Jill R. Sperber, Esq. of Sperber Dispute Resolution serving as the mediator. The mediation was successful and the Parties ultimately reached an agreement in principle to resolve this case on a class-wide basis. The Parties now seek preliminary approval of the attached Class Action Settlement Agreement.

The risks in this case were substantial, and the Parties worked efficiently and extensively to negotiate and execute the Settlement. If approved, the Settlement will establish a fund which, after deducting for all court-approved costs and expenses, will be distributed to the Settlement Class Members on a *pro rata* basis based on the amount of tobacco surcharges paid. The Settlement avoids years of protracted litigation and is within the range of reasonableness and warrants notice to the Class so members can be apprised of its terms and respond. Plaintiffs, therefore, respectfully request that this Court: (i) preliminarily approve the Settlement as fair, adequate, and reasonable; (ii) appoint Plaintiffs Michael Barker and George Cross as Class Representatives; (iii) appoint Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP as Class Counsel; (iv)

provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(1) for settlement purposes; (v) approve the proposed notice program; (vi) schedule a Final Approval Hearing; and (vii) set deadlines for members of the Settlement Class to submit objections.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs commenced this putative class action on June 3, 2026, challenging Defendant's administration of a tobacco surcharge under its employee health plan. This action is among a number of similar cases filed nationwide concerning the application of ERISA's wellness program requirements to tobacco surcharges. Plaintiffs allege that Defendant imposed a $15 weekly surcharge, or approximately $780 annually, on employees who use tobacco, with an additional surcharge potentially applying to covered spouses. *See* ECF No. 2. Specifically, Plaintiffs allege that Defendant's Plan materials, including its summary plan description and benefit guides, failed to adequately inform participants of the available alternatives to the surcharge, including their right to pursue an alternative recommended by their personal physician, or explain how participants could obtain the full annual reward upon completing an alternative standard during the Plan year. *Id.* ¶¶ 36–46. Defendant denies all allegations. Defendant maintains that it operated the Plan prudently and legally and complied with ERISA at all times.

The Court entered its Scheduling Order on July 23, 2026 (ECF No. 16). The Parties filed their Joint Motion for Stay of All Deadlines on August 5, 2026 (ECF No. 18), requesting a stay while they engaged in good-faith settlement negotiations and participated in mediation on September 2, 2026. Following a successful mediation, the Parties filed their Joint Status Report and Request for Extension of Stay on September 16, 2026 (ECF No. 20), pursuant to the Court's August 6, 2026 Order (ECF No. 19), informing the Court that they had reached an agreement in

principle. The Parties requested an additional stay until November 10, 2026, to permit Plaintiffs to file the present Motion for Preliminary Approval of Class Action Settlement.

## III. THE SETTLEMENT NEGOTIATIONS AND AGREEMENT

The proposed Settlement is the product of informed, arm's-length negotiations between the Parties. After Plaintiffs filed the Complaint, the Parties began good faith negotiations and subsequently engaged in a full-day mediation session before Jill R. Sperber, Esq. of Sperber Dispute Resolution on September 2, 2026, during which they exchanged written and oral proposals, including argument and analysis of the Parties' respective positions. Faircloth Decl., ¶¶ 12–14. Only after counsel had developed a sufficient understanding of the factual and legal issues in dispute were the Parties able to engage in informed, productive settlement discussions through the mediation process. *Id.* ¶¶ 12–14, 33.

Class Counsel investigated Defendant's tobacco surcharge program's design and administration, and the governing Plan materials to evaluate the strengths and weaknesses of the class-wide claims, including the fiduciary-breach allegations. *Id.* ¶ 33. The Parties thereafter negotiated a class-wide settlement in principle with the Mediator's assistance and, following further negotiations over the material terms, reduced it to a formal written Settlement Agreement. *Id.* ¶ 15.

Under the Settlement Agreement, Defendant will fund a Gross Settlement Amount of $3,175,000. SA, § I.23. Subject to Court approval and deductions for Attorneys' Fees and Costs, Case Contribution Awards, Taxes, Administrative Expenses, and a contingency reserve, the Net Settlement Amount will be distributed to Settlement Class Members on a *pro rata* basis tied to the net amount of tobacco surcharges each Class Member paid during the Class Period. SA, § I.26; Exhibit B, Plan of Allocation § II. The Settlement thus provides immediate and substantial

monetary relief while avoiding the substantial cost, risk, and delay associated with continued litigation, class certification proceedings, merits and expert discovery, dispositive motion practice, trial, and appeal. *See* Faircloth Decl. ¶¶ 33–36. The Settlement is not the product of collusion or compromise on anything other than the Parties' disputed claims and defenses, and it reflects a considered resolution reached by experienced counsel after sufficient investigation, motion practice, and a formal mediation. *Id.* ¶¶ 34, 39.

### A. *The Settlement Class*

The Settlement contemplates certification of a non-opt-out class under Rule 23(b)(1):

> All individuals meeting the following criteria: (a) the individual resides in the United States; and (b) paid a tobacco surcharge in connection with their participation in the Plan from June 3, 2020, through the date of entry of the Preliminary Approval Order.

SA, § I.8. Based on Defendant's data, the Settlement Class consists of approximately 25,500 individuals. Faircloth Decl., ¶ 4.

### B. *Calculation of Class Member Payments and Distribution Timing*

The Settlement Administrator will calculate each Class Member's Net Surcharge Payments—the total tobacco surcharges paid during the Class Period, less any refunds applied to those payments (the "Balance"). SA, Exhibit B, Plan of Allocation §§ II.B–C. The Settlement Administrator will sum the Balances of all Class Members and allocate to each Class Member a proportional share of the Net Settlement Amount (the "Entitlement Amount") based on the ratio of that Class Member's Balance to the sum of all Class Members' Balances. *Id.* § II.C. In other words, the more a participant paid in tobacco surcharges, the greater that participant's share of the Net Settlement Amount.

Importantly, the Plan of Allocation also provides for a minimum payment of $10.00 to each Class Member with a positive Balance, provided sufficient settlement funds are available. *Id.* § II.C.4. To the extent a Class Member's proportional allocation would otherwise fall below $10.00, the Settlement Administrator will increase that payment to $10.00 and proportionately adjust the remaining allocations to ensure that total distributions do not exceed the Net Settlement Amount. *Id.* This minimum-payment provision is designed to ensure that Class Members actually cash the checks, while preserving the proportional allocation of the settlement proceeds.

The Settlement is also structured to maximize participation and minimize administrative burdens on Class Members. Distributions will occur automatically, without requiring Class Members to submit claim forms or take any affirmative action to receive payment. The Settlement Administrator will calculate each payment using Defendant's records and issue checks directly to eligible Class Members. *Id.* §§ II.A, II.D–E. Settlement checks will remain valid for 200 calendar days from issuance. *Id.* § II.D; SA, § III.7.

Amounts allocated to Class Members who cannot be located, who otherwise cannot receive their payments, or who fail to cash their checks within the applicable 200-day period will remain in the Qualified Settlement Fund. SA, § III.7. Following expiration of the check-negotiation period and final reconciliation, any funds remaining after payment of applicable Administrative Expenses, Taxes, and other settlement obligations will be distributed to a Court-approved *cy pres* recipient. *Id.*; Exhibit B, Plan of Allocation § II.G. The recipient will be proposed by Defendant, subject to Class Counsel's approval, and any disagreement will be resolved by the Court. *Id.* Critically, the Settlement is nonreversionary: no portion of the Gross Settlement Amount, including uncashed payments, accrued interest, or unused administrative reserves, will revert to Defendant or its insurer. *Id.*

**C.** ***Release and Covenant Not to Sue***

The Settlement includes a release tied to the claims and factual predicate of this action. In exchange for the benefits provided by the Settlement, Plaintiffs, the Plan (subject to Independent Fiduciary approval), and Settlement Class Members will release Defendant and the other Released Parties from the Released Claims, which are claims that were asserted in the Action; could have been asserted in the Action based on the factual allegations in the Complaint concerning tobacco surcharges under the Plan; relate to or arise out of the Settlement or its implementation; or would have been barred by res judicata had the Action been fully litigated to a final judgment. SA, §§ I.34, V.1-6. The releases become effective as of the Settlement Effective Date, and, subject to Court approval, the Final Approval Order and Judgment will dismiss the Action and all Released Claims with prejudice. SA, §§ III.1.g-j, V.1.

**D.** ***Independent Fiduciary Review***

Because the Settlement resolves claims brought on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Defendant will select and retain an Independent Fiduciary to review the Settlement on behalf of the Plan and determine whether it is reasonable and fair, including whether to authorize the Settlement. SA, §§ I.24, II.5. The Independent Fiduciary must provide Defendant with its written determination no later than thirty (30) days before the Final Approval Hearing, and a copy will be provided to Class Counsel, who shall file it with the Court prior to final approval. *Id.* § II.5(c), (d). Independent Fiduciary Fees, which may not exceed $25,000, will be paid from the Gross Settlement Amount. SA, §§ I.25, II.5.a. The Parties will update the Court with the Independent Fiduciary's findings.

### E. *Anticipated Notice Program*

The notice program is reasonably calculated to apprise Settlement Class Members of the Settlement and their rights. No later than twenty (20) business days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator the Class Member List needed to identify the Settlement Class. SA, § II.3.a. No later than sixty (60) calendar days before the Final Approval Hearing, the Settlement Administrator will send the Settlement Notice to Class Members via U.S. Mail and/or other approved methods. SA, § II.4; Exhibit C. The Settlement Notice directs Class Members to a Settlement Website where the Settlement Agreement, the Complaint, and additional information about the Settlement will be available. SA, Exhibit A. Because this is a non-opt-out settlement under Rule 23(b)(1), the Settlement Notice will not include an exclusion procedure, and Settlement Class Members may object in writing no later than fourteen (14) calendar days before the Final Approval Hearing and, if they timely object and serve a Notice of Intention to Appear, may appear at the Final Approval Hearing. SA, Exhibits A, C.

### F. *Attorneys' Fees and Costs and Case Contribution Awards*

Class Counsel will apply to the Court for an award of Attorneys' Fees and Costs and Case Contribution Awards for each Class Representative. SA, §§ II.6.a-f. Under the Settlement Agreement, Class Counsel may seek an award of Attorneys' Fees and Costs, inclusive of fees, costs, and expenses, not to exceed 33.3% of the Gross Settlement Amount (approximately $1,057,275 (33.3% of $3,175,000)). SA, §§ I.3, II.6.a. In addition, each Class Representative may seek a Case Contribution Award not to exceed $7,500 (up to $15,000 collectively for the two Class Representatives). SA, § II.6.c. The fee request will be made by separate motion no later than forty-five (45) calendar days before the Final Approval Hearing, well before the deadline for objections,

affording Settlement Class Members sufficient time to review the application and determine whether to object. SA, § II.6.f; Exhibit C.

## IV. ARGUMENT

### A. *The Court Should Grant Preliminary Approval*

#### 1. Legal Standard

Class certification is only appropriate when the four threshold requirements of Rule 23(a) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). These requirements—numerosity, commonality, typicality, and adequate representation—"effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotations omitted). The proposed class must also fit within one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).

A settlement of a class action requires court approval, which may be given "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). There are typically two stages to this approval process. *Milam v. Ark. Util. Prot. Servs., Inc.*, No. 4:18-CV-00312 BSM, 2019 U.S. Dist. LEXIS 251098, at *3 (E.D. Ark. Feb. 15, 2019) (citing *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013)). "At the first stage, the parties submit the proposed settlement to the Court, which must make a preliminary fairness evaluation." *Id.* (quoting *Martin*, at 383 (internal quotation omitted)). "If preliminary approval is given, notice must be provided to the class members in order to afford them an opportunity to be heard on, object to, and opt out of the settlement." *Id.*, at *4 (internal quotation omitted).

For the purposes of preliminary approval, "the 'fair, reasonable and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval

due to an absence of any glaring substantive or procedural deficiencies." *Milam*, at *4 (quoting *Schoenbaum v. E.I. Dupont De Nemours & Co.*, Case No. 4:05-CV-01108 ERW, 2009 U.S. Dist. LEXIS 114080, 2009 WL 4782082, at *13 (E.D. Mo. Dec. 8, 2009)). At the same time, "preliminary approval is not simply a judicial rubber stamp of the parties' agreement [courts] must be particularly scrupulous because preliminary approval establishes an initial presumption of fairness." *Id*. (quoting *Martin*, 295 F.R.D. at 383 (internal quotations omitted)).

Rule 23 requires that plaintiff's notice plan result in "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

### 2. The Settlement Provides a Fair, Adequate, and Reasonable Result for the Settlement Class Members

Each of the factors identified in Rule 23(e)(2) supports preliminary approval of the proposed Settlement. *See Chadwick v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-cv-1161-DPM, 2026 U.S. Dist. LEXIS 72008, at *2 (E.D. Ark. Mar. 27, 2026).

#### *a. The Class Representatives and Class Counsel Have Adequately Represented the Class*

Plaintiffs and Class Counsel have vigorously and effectively represented the interests of the Class throughout this litigation. Rule 23(e)(2)(A) requires the Court to consider whether the class representatives and class counsel have adequately represented the class. This inquiry looks to whether the interests of the representatives are aligned with those of absent class members, and whether counsel are qualified, experienced, and have vigorously prosecuted the action. Both requirements are satisfied here.

Plaintiffs have been exemplary representatives. They spent significant time reviewing pleadings, gathering documents, communicating with Class Counsel to frame the claims, and

participating in settlement discussions. Faircloth Decl., ¶ 16. Their claims are identical to those of all Class Members, and the relief they are seeking is determined by the same pro rata formula applied to every Class Member's "Net Surcharge Payments." *Id.*, ¶¶ 19–20.

Class Counsel, Siri & Glimstad LLP ("SG"), likewise satisfy Rule 23's adequacy standard. Counsel has extensive experience litigating complex ERISA and class matters nationwide, including health-plan nondiscrimination claims under ERISA, § 702 and PHSA, § 2705. Faircloth Decl., ¶ 48; *see also id.*, Exhibit 2, SG's Firm Resume – Class Action Group. Here, they vigorously prosecuted the case, including researching novel legal issues arising under ERISA's wellness program regulations, consulting with experts, and evaluating the evolving body of case law governing tobacco surcharge programs to ensure that the Class's interests were fully protected at every stage of the case. Class Counsel conducted targeted discovery sufficient to evaluate class-wide liability and damages. *Id.*, ¶¶ 8-16. In doing so, counsel analyzed Defendant's Plan documents and Summary Plan Descriptions, the Benefits Guides addressing the tobacco surcharge, and financial data reflecting tobacco surcharges charged and collected during the Class Period. *See id*.

If the Court should preliminarily approve the Settlement, Class Counsel will continue to actively represent the interests of the Settlement Class during the notice and administration process. Counsel solicited and evaluated proposals from multiple settlement administrators before selecting Rust Consulting, Inc. ("Rust") to administer the Settlement and will work closely with the administrator to implement the Court-approved notice program. Faircloth Decl. ¶¶ 50-52; SA, § I.37. Counsel will field inquiries from Settlement Class Members, coordinate with Rust to address questions regarding the Settlement, and monitor the administration process. *Id.*

As set forth in the supporting declaration, counsel's qualifications and track record demonstrate that the Class has been represented with skill, diligence, and tenacity. *See id.*, Exhibit A.

### ***b. The Settlement Was Negotiated at Arm's Length***

Rule 23 requires the Court to consider whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This inquiry focuses on whether the settlement is the product of "fraud or collusion." *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted). Courts evaluating this factor consider, among other things, the extent of the parties' investigation of the claims, the adversarial nature of the proceedings, the duration and structure of negotiations, and whether the parties engaged in mediation before a neutral third party. *See Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, 2022 U.S. Dist. LEXIS 111091, at *5 (D. Minn. June 22, 2022); *In re Resideo Techs., Inc. Secs. Litig.*, No. 19-cv-2863, 2022 U.S. Dist. LEXIS 53324, at *6 (D. Minn. Mar. 24, 2022).

The record here strongly supports the conclusion that the Settlement is the product of arm's-length negotiations between experienced counsel. Faircloth Decl., ¶ 39. Although the case was resolved at an early stage, the Parties nevertheless engaged in meaningful investigation and evaluation of the claims before entering into settlement discussions. *Id.* Class Counsel analyzed the governing statutory and regulatory framework applicable to ERISA wellness programs and evaluated the potential scope of liability and damages associated with Defendant's tobacco surcharge practices. *Id.* With that information in hand, the Parties engaged in substantive negotiations regarding the merits of the claims, the risks of continued litigation, and the appropriate framework for resolving the dispute on a class-wide basis.

The Parties' negotiations were conducted by counsel experienced in complex ERISA and class action litigation who were fully informed about the strengths and weaknesses of their respective positions, enabling them to engage in meaningful and informed negotiations. Faircloth Decl., ¶¶ 8-16. There is no indication that the Settlement was the product of collusion or improper conduct. To the contrary, the adversarial posture of the parties, the involvement of experienced counsel on both sides, and a neutral mediator ensured that the negotiations were conducted in a professional and arm's-length manner. *Chadwick*, 2026 U.S. Dist. LEXIS 72008, at *3 (granting preliminary approval because "[t]he proposal is the result of arm's-length negotiations by experienced lawyers, with the assistance of a neutral mediator"). Where, as here, experienced counsel engaged in informed negotiations that resulted in a settlement designed to resolve contested claims while avoiding the expense and uncertainty of continued litigation, the Court should find this factor supports preliminary approval of the Settlement.

#### ***c. The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Potential Appeals***

The proposed Settlement provides meaningful and immediate relief that is more than adequate when weighed against the risks, costs, and delays of continued litigation. While tobacco surcharge claims turn on compliance with well-defined statutory and regulatory "safe harbor" conditions for health-contingent wellness programs (*see* ERISA, § 702(b), 29 U.S.C. § 1182(b); PHSA, § 2705, 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702(f)), important merits and class certification risks remain, particularly after the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024), eliminating *Chevron* deference. While Plaintiffs maintain that *Loper Bright* does not preclude their claims and, if anything, underscores the persuasive force of the expert interpretations issued by the agencies charged with administering ERISA's wellness

program regulations, the evolving post-*Loper Bright* landscape nonetheless introduces an additional layer of risk that the Settlement avoids.

On the merits, Plaintiffs allege that Defendant's tobacco wellness program did not fully comply with ERISA's requirements governing health-contingent wellness programs. Specifically, Plaintiffs contend that the Plan materials did not adequately explain the circumstances under which participants could avoid the tobacco surcharge, including whether participants who completed a tobacco cessation program during the Plan year would receive the full annual discount contemplated by ERISA. See 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Plaintiffs further allege that certain Plan materials did not sufficiently explain when or how the discount would become effective following completion of the program or provide the required disclosures concerning reasonable alternative standards, including the availability of accommodations based on a participant's personal physician's recommendations. *See* 45 C.F.R. § 146.121(f)(4)(v); Compl. ¶¶ 37–42. Defendant disputes Plaintiffs' allegations and denies that its wellness program violated ERISA or any other applicable law. Most courts have found these types of claims sufficient to survive a motion to dismiss, but none of them have reached decisions on a motion for summary judgment in the tobacco surcharge space requiring retroactive reimbursement and robust notice.[1] *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). However,

[1] *See Baker v. 7-Eleven Inc.*, No. 3:25-cv-01609, 2026 U.S. Dist. LEXIS 33855 (N.D. Tex. Feb. 19, 2026); *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-cv-00085-DAE, 2026 U.S. Dist. LEXIS 10099 (W.D. Tex. Jan. 19, 2026); *Knight v. LHC Group, Inc.*, No. 6:25-cv-00263, ECF Nos. 52, 61 (W.D. La. Nov. 18, 2025); *Waggoner v. Carle Found.*, No. 24-cv-2217, ECF 27, at 40 (C.D. Ill. Sept. 16, 2025); *Fisher v. GardaWorld*, No. 3:24-cv-00837, 2025 U.S. Dist. LEXIS 167251 (W.D.N.C. Aug. 27, 2025); *Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 905 (E.D. Va. 2025); *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589, at *12 (W.D. Mo. Apr. 15, 2025); *Sec'y of Labor v. Macy's, Inc.*, No. 1:17-cv-541, 2021 U.S. Dist. LEXIS 221603, at *50 (S.D. Ohio Nov. 17, 2021); *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515, 520 (W.D. Mo. 2021).

the outcome of continued litigation is not certain. Courts considering similar claims have reached differing conclusions.[2] That reality underscores the significant litigation risk the Class would face if this case proceeded through class certification, summary judgment, trial, and appeal.

Experience in ERISA class actions further demonstrates that such litigation often extends for many years before any recovery is obtained. In some cases, ERISA litigation has lasted close to a decade before resolution. *See Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) (settlement reached only after a decade); *Masten v. Metropolitan Life Ins. Co.*, No. 1:18-cv-11229 (S.D.N.Y.) (ERISA case filed in 2018 and still ongoing); *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541 (S.D. Ohio) (tobacco surcharge enforcement case filed in 2017 and still ongoing). Settlement would avoid those risks and delays.

Rather than face the prospect of prolonged litigation and uncertain outcomes, the Settlement makes available immediate and meaningful monetary relief to more than 25,500 Settlement Class Members. Courts have recognized that such prompt and certain relief strongly favors approval of class settlements. *See*, *e.g.*, *Compton v. N. Cent. Va. Rests., Inc.*, No. 5:20-cv-00073, 2022 U.S. Dist. LEXIS 159070, at *9 (W.D. Va. Sept. 2, 2022) (approving settlement that ensured plaintiffs "receive[d] an immediate, tangible benefit instead of an uncertain future award and effectively distribute[d] relief to all identified class members"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) (recognizing that in settlement evaluation, "a bird in hand is worth two in the bush").

The Settlement's monetary relief—$3,175,000 paid into a Qualified Settlement Fund—is substantial. *See* Faircloth Decl., ¶ 18; SA, § I.23. The Net Settlement Amount will be automatically

[2] *See Noel v. Pepsico, Inc.*, No. 24-cv-7516, 2026 U.S. Dist. LEXIS 41586 (S.D.N.Y. Feb. 27, 2026) (dismissed all claims); *Plesha v. Ascension Health All.*, No. 4:24-cv-01459, 2026 U.S. Dist. LEXIS 22061 (E.D. Mo. Feb. 3, 2026) (same); *Williams v. Bally's Mgmt. Grp., LLC*, No. 1:25-00147, 2025 U.S. Dist. LEXIS 217102 (D.R.I. Nov. 4, 2025) (same).

distributed *pro rata* by check to Class Members based on their actual tobacco surcharges paid during the Class Period (less any refunds), without having to file any claim form, ensuring payments track the harm alleged and eliminating administrative barriers to recovery. SA, § I.26; Exhibit B, Plan of Allocation § II. By contrast, continued litigation would entail expensive expert work on compliance and class certification, prolonged briefing in an ever-changing landscape of decisions, and likely appeals, extending resolution and delaying recovery for thousands of participants. Faircloth Decl., ¶¶ 25-32. The Settlement avoids these risks and delays, provides cash payments promptly after final approval, and ensures equitable distribution across the Class.

The Settlement secures a result that compares favorably to other ERISA and complex class action settlements, which often recover in the range of 15% to 25% of total claimed losses.[3] Also, the method of distribution is straightforward and efficient: no claims process is required; checks will issue automatically to Class Members at their last known address. SA Exhibit B, Plan of Allocation § II. Therefore, the present Settlement is adequate, fair, and reasonable.

While the Court already has sufficient reason to conclude that the Settlement is fair and adequate, the Settlement provides for an evaluation and opinion of an Independent Fiduciary (SA,

---

[3] *See e.g.*, *Figas v. Wells Fargo*, No. 08-cv-4546, Doc. No. 265 at 17 (D. Minn.) ($17.5 million settlement representing 19.5% of alleged losses); *In Re Moneygram International, Inc. Securities Litigation*, No. 08-cv-883, Doc. 166 at 14 (D. Minn.) (25% recovery); *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019 U.S. Dist. LEXIS 75837, at *19 (M.D.N.C. May 6, 2019) (19% recovery); *Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95, at 18 (D. Mass. Mar. 24, 2021) (15–20% recovery); *Price v. Eaton Vance Corp.*, No. 1:18-cv-12098, ECF No. 32 at 12 (D. Mass. May 6, 2019), approved at ECF No. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Franklin v. Duke Univ.*, No. 1:23-CV-833, 2026 U.S. Dist. LEXIS 14532, at *2 (M.D.N.C. Jan. 27, 2026) (approving "settlement [that] awarded the class roughly 17% of the plaintiff's calculated classwide damages."); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698, 2018 U.S. Dist. LEXIS 80219, at *15-16 (N.D. Cal. May 11, 2018) (approving recovery of "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses") (citation omitted); *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("[t]he typical recovery in most class actions generally is three to six cents on the dollar.").

§§ I.24, II.5), which should assure the Court of the fairness and adequacy of the Settlement. *See In re Medstar ERISA Litig.*, No. 20-cv-1984, 2024 U.S. Dist. LEXIS 161002, at *15 (D. Md. Sep. 5, 2024) (finding the review of an independent fiduciary "further confirms the adequacy of the proposed settlement.").

For the foregoing reasons, the Settlement satisfies the adequacy requirement. It eliminates the risk and uncertainty, provides for substantial immediate benefit to the Class Members, falls within the range of other ERISA settlements in similar contexts, will be subject to review by an Independent Fiduciary, and should be approved by the Court.

#### ***d. The Plan of Allocation and Method of Distribution Are Fair, Reasonable, and Equitable***

The Court must also evaluate the fairness of the Settlement's plan of allocation and method of distribution under the same standards that apply to the Settlement as a whole. *See* Fed. R. Civ. P. 23(e)(2)(D). "There is no requirement that all class members in a settlement be treated *equally*." *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144, 2019 U.S. Dist. LEXIS 25458, at *27 (S.D. Iowa Feb. 14, 2019) (emphasis in original) (citing *Marshall v. NFL*, 787 F.3d 502, 510 (8th Cir. 2015)).

The Plan of Allocation here readily satisfies that standard. Settlement payments will be distributed *pro rata* based on each Class Member's "Net Surcharge Payments," defined as the total tobacco surcharges paid during the Class Period, less any refunds applied to those payments. SA Exhibit B, Plan of Allocation §§ II.B–C. This formula directly reflects the transaction-based harm alleged in the Action and treats all Class Members equitably by distributing the Net Settlement Amount in proportion to the amount each paid. Participants who paid higher surcharges receive larger distributions, while those who paid less receive correspondingly smaller amounts. *See* Faircloth Decl., ¶¶ 19-20. The Plan of Allocation further provides for a minimum payment of $10

to each Class Member with a positive Balance, subject to the availability of sufficient settlement funds. *Id.* § II.C.4. This provision ensures that participants with relatively small surcharge payments receive a meaningful recovery, while preserving the proportional allocation of the remaining settlement proceeds. *Id.*

The method of distribution is also efficient and administratively straightforward. Settlement payments will be issued automatically by check to Class Members without requiring claim forms, and checks will remain valid for 200 calendar days from issuance. *See* SA, § III.7; Exhibit B, Plan of Allocation § II.D. The Settlement Fund is non-reversionary, ensuring that no portion of the recovery reverts to Defendant. SA, §§ I.23, III.7. Any funds remaining after the check-cashing period and payment of Administrative Expenses, Taxes, and other amounts payable under the Settlement Agreement will be distributed to a *cy pres* recipient selected by Defendant, subject to Class Counsel's approval, or by the Court if the Parties cannot agree. *Id.*; Exhibit B, Plan of Allocation § II.G. Importantly, the Plan of Allocation relies on objective Plan data reflecting the actual surcharges paid, rather than speculative damages modeling. This approach promotes transparency and accuracy while reflecting the "full reward" framework underlying tobacco surcharge claims. Because the allocation method is directly tied to the alleged harm, treats Class Members equitably, and provides efficient automatic distribution without claim forms, it satisfies Rule 23(e) and should be approved.

### 3. The Additional Fairness Factors Also Support Preliminary Approval

#### *a. The Merits of Plaintiffs' Claims Weighed Against the Settlement Favor Approval*

This factor requires the Court to weigh the strengths of Plaintiffs' claims against the benefits provided by the Settlement. While Plaintiffs believe their claims are well-founded and supported by the governing statutory and regulatory framework, continued litigation would present

significant risks. Faircloth Decl., ¶¶ 25-32. Defendant disputes liability and would challenge Plaintiffs' claims through dispositive motions, class certification proceedings, and potentially trial. Moreover, as discussed, courts addressing tobacco surcharge claims under ERISA have reached differing conclusions regarding the interpretation and application of the wellness program regulations, with some courts adopting restrictive interpretations of the wellness program statute, regulations, and/or the Departments of Labor, Treasury, and Health and Human Services' (the "Departments") regulatory guidance. *See Williams*, 2025 U.S. Dist. LEXIS 217102, at *30 (concluding that "full reward" could mean prospective relief that begins halfway through the plan year because that phrase is simply "a matter of perspective").

Despite what Plaintiffs contend is clear guidance from the Departments that directly contradicts this interpretation, other courts have embraced this erroneous "matter of perspective" interpretation. *See Noel*, 2026 U.S. Dist. LEXIS 41586, at *31*; Plesha*, 2026 U.S. Dist. LEXIS 22061. The result is a legal landscape that is both unsettled and shifting, with new rulings emerging on a regular basis and courts reaching sharply different conclusions on similar allegations. Faircloth Decl., ¶¶ 25-32. Against this backdrop, the Settlement provides meaningful and certain monetary relief to the Class now, while avoiding the delay, expense, and uncertainty associated with continued litigation in a rapidly developing area of law. By securing a guaranteed recovery for Class Members today, the Settlement eliminates the risk that future rulings—whether at the district court or appellate level—could reduce or eliminate recovery altogether. Accordingly, this factor weighs strongly in favor of approval of the Settlement.

***b. Defendant's Financial Condition Does Not Undermine the Settlement***

This factor considers whether the defendant's financial condition suggests that a greater recovery might be necessary to ensure fairness. *Ewing v. Pizza Czar, Inc.*, No. 3:19-cv-00232-

LPR, 2022 U.S. Dist. LEXIS 37063, at *8 n. 49 (E.D. Ark. Mar. 2, 2022). Nothing about Defendant's financial condition undermines the reasonableness of the Settlement. Recent public filings reflect that Defendant is a large, financially stable company with significant resources, reporting approximately $12 billion in total revenue in fiscal year 2025, and $865 million in operating income. *See* Annual Report 2025, available at: https://investor.jbhunt.com/~/media/Files/J/jb-hunt-ir/documents/annual-reports/annual-report-2025.pdf (last visited Oct. 20, 2026).

These figures demonstrate that Defendant has ample financial resources to satisfy the obligations created by the Settlement. At the same time, the law does not require a settlement to extract the maximum theoretical recovery from a defendant simply because it may have the ability to pay more. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) ("While it is undisputed that [the settling defendant] could pay more than it is paying in this settlement, this fact, standing alone, does not render the settlement inadequate."). Rather, settlements are compromises that balance the risks, expense, and uncertainty of continued litigation. Here, the Settlement represents a substantial and meaningful payment to Class Members while avoiding the costs and risks associated with continued litigation. The fact that Defendant is financially capable of funding the Settlement confirms that the recovery is real, immediate, and secure, and therefore this factor supports approval of the Settlement.

#### ***c. The Complexity, Risk, and Expense of Further Litigation Support Settlement***

This case presents complex statutory and regulatory issues arising under ERISA's nondiscrimination provisions and the federal regulatory framework governing health-contingent wellness programs. Plaintiffs' claims implicate the interaction between ERISA, the Patient Protection and Affordable Care Act's amendments to the Public Health Service Act, and the

implementing regulations jointly promulgated by the Departments. Faircloth Decl., ¶¶ 25-32. Interpreting and applying these overlapping statutory and regulatory provisions has proven difficult for courts, and recent decisions addressing tobacco surcharge programs have reached inconsistent results on key questions of regulatory interpretation. *Ramos v. Banner Health*, 325 F.R.D. 382, 396 (D. Colo. 2018) ("ERISA is an enormously complex and detailed statute,"); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *9 (D. Md. Jan. 28, 2020) ("ERISA claims [] are not only dependent on the statute but also on various regulations that implement ERISA… It involves 'novel questions of law.'"). The governing legal landscape remains unsettled and continues to evolve as new decisions are issued.

If this case were to proceed, the Parties would face substantial additional litigation costs and risks. Continued litigation would require extensive briefing on contested statutory interpretation issues and potentially multiple rounds of dispositive motions. Faircloth Decl., ¶¶ 25-32. The case would also involve complex class certification proceedings addressing issues such as commonality, predominance, and damages methodology under Rule 23. *Id.* Discovery would likely be extensive, including the production and review of plan documents, administrative records, internal communications, wellness program materials, enrollment data, and payroll and premium records spanning multiple plan years. *Id.* Depositions of plan fiduciaries, benefits administrators, and corporate representatives would also be expected. *Id.* Plaintiffs would need expert analysis to model class-wide damages, including calculating the amount of tobacco surcharges paid and the relief owed under the applicable regulatory framework. Expert testimony would also likely be required regarding plan administration and compliance with the wellness program regulations. Defendant, in turn, would be expected to retain competing experts to

challenge Plaintiffs' damages model and regulatory interpretations. The resulting expert discovery, reports, and *Daubert* proceedings would further increase the cost and complexity of the litigation.

Even after these steps, the case would remain subject to significant appellate risk given the developing and inconsistent body of case law in this area. Continued litigation could span years with substantial expenditures of time and resources by the parties and the Court. By contrast, the proposed Settlement provides immediate and certain monetary relief to Class Members while avoiding the significant expense, delay, and uncertainty associated with further litigation. This factor strongly supports approval of the Settlement.

***d. The Absence of Opposition Supports Preliminary Approval***

Finally, the degree of opposition to a proposed settlement is a relevant consideration. However, at the preliminary approval stage, the Court typically has not yet received objections from class members because notice has not yet been disseminated. Accordingly, the Court will be able to meaningfully assess this factor only after the proposed notice has been provided to the Class and class members have had an opportunity to review the Settlement and submit any objections. Still, at present, there is no indication of opposition to the proposed Settlement. To the contrary, both named Plaintiffs have reviewed and approved the Settlement and believe that it represents a fair and reasonable resolution of their claims. Faircloth Decl., ¶ 16. The Settlement was also negotiated and endorsed by experienced counsel for the parties, each of whom is well-versed in complex ERISA litigation and class action practice.

Taken together, these additional factors further confirm that the proposed Settlement represents a fair, reasonable, and adequate resolution of this dispute and warrants preliminary approval.

### B. *The Class Should Be Preliminarily Certified for Settlement Purposes*

#### 1. The Settlement Class Satisfies Rule 23(a)'s Requirements

##### *a. Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Milam*, 2019 U.S. Dist. LEXIS 251098 at *4-*5 (holding that a class numbering 163 members is sufficient). Here, the proposed Settlement Class includes approximately 25,500 participants who paid the tobacco surcharge in connection with their participation in the Plan. Faircloth Decl., ¶ 4. A class comprised of approximately 25,500 people is sufficiently numerous and renders joinder impracticable. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982) (finding courts may also consider "the inconvenience of trying individual suits"). Numerosity is satisfied.

##### *b. Commonality*

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *Gomez v. Centennial Bank*, No. 4:23-cv-00333-LPR, 2025 U.S. Dist. LEXIS 145590, at *5 (E.D. Ark. July 30, 2025). This requirement does not mandate commonality on every issue. *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 364 (S.D. Iowa 2008) (citing *Paxton*, 688 F.2d at 561). "Rather, the issues linking the class members must be 'substantially related' to resolution of the case." *Id.* (citing *Paxton*, 688 F.2d at 561). "A proponent of class certification cannot show commonality by demonstrating merely that the class members have all suffered a violation of the same provision of law." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). "The 'common contention' in Rule 23(a)(2) 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sandusky Wellness Ctr., LLC v. Medtox Sci.,*

*Inc.*, 821 F.3d 992, 998 (8th Cir. 2016). "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation," *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (internal quotes omitted), which is not a very high hurdle to cross. In fact, commonality is "satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

This case presents common questions arising from Defendant's uniform tobacco surcharge and the administration of an outcome-based wellness program. Plaintiffs allege that Defendant violated the full reward rule by not informing participants that they can avoid the tobacco-user surcharge, fails to explain when or how the discount becomes effective following completion of the program, omits contact information and the required statement that recommendations of a participant's personal physician will be accommodated in determining a reasonable alternative standard, fails to clearly notify participants of all the avenues available to them to avoid the surcharge, even though it is a core Plan term that directly affects participants' premium contributions, and failed to inform participants that they have a right to a physician-directed alternative. These issues turn on common proof, including the Plan and SPD, Benefits Guides, surcharge data, and the governing statutory and regulatory framework for health-contingent wellness programs. *See* Faircloth Decl., ¶¶ 4, 43; *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515, 526 (W.D. Mo. 2021) ("Plaintiffs' theory of liability is based on common, class-wide tobacco surcharge documents that were distributed and/or available to all participants."). Moreover, the Settlement itself underscores the commonality of the claims. The Settlement's common-fund distribution—based on each Class Member's Net Surcharge Payments (total tobacco surcharges

paid during the Class Period less any refunds)—reinforces that the alleged harm and remedy are class-wide. *See* SA Exhibit B, Plan of Allocation § II. Accordingly, commonality is satisfied.

This case presents a textbook example of a uniform Plan-wide practice producing class-wide effects, supported by a common legal theory and resolved through a standardized remedy.

#### *c. Typicality*

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *Paxton*, 688 F.2d at 562. In short, to meet the typicality requirement, Plaintiffs simply must demonstrate that "there are other members of the class who have the same or similar grievances as the plaintiff." *Gomez*, 2025 U.S. Dist. LEXIS 145590, at *5 (internal quotation omitted); *Paxton*, 688 F.2d at 562.

Here, Plaintiffs' claims are typical because they arise from Defendant's uniform tobacco surcharge and wellness program administration. Plaintiffs and all Class Members were assessed the same surcharge under the same policy and seek relief on the same legal theories. Faircloth Decl., ¶ 44. Proof of Plaintiffs' claims will advance the claims of all Class Members through common evidence (Plan and SPD language, program administration, surcharge transaction data, and governing regulations), and the Settlement's standardized formula applies equally to all Class Members. *See* SA Exhibit B, Plan of Allocation § II.

Nor are there any unique defenses that would make Plaintiffs' claims atypical or subject to individualized analysis. There is no indication that their eligibility, timing, or elections differ in a way that would meaningfully affect the legal or factual questions at issue. Because Plaintiffs'

claims arise from the same course of conduct and rest on the same legal foundation as the claims of all Class Members, the typicality requirement is clearly met.

#### *d. Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that the representative parties "will fairly and adequately protect the interests of the class." The Eighth Circuit Court of Appeals has instructed:

> The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.

*Paxton*, 688 F.2d at 562-63. Both elements are satisfied here.

Plaintiffs have actively participated throughout the case, including convening with counsel, reviewing filings, being available for and assisting in mediation, and agreeing to resolve the case only after understanding the proposed relief and litigation risks. Faircloth Decl., ¶ 16. Their interests are fully aligned with those of the Class: they seek to maximize relief for participants who paid the tobacco surcharge under Defendant's uniform policy. There are no conflicts between Plaintiffs and the Class and no indication that they would prioritize their own interests over those of the Class. The existence of the elements of adequate representation "[is] usually [presumed] in the absence of contrary evidence." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993) (citation omitted).

Related to the adequacy inquiry, Rule 23(g) provides factors for the Court to consider in appointing counsel on behalf of a class:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

> law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). Plaintiffs' counsel plainly satisfy the adequacy requirement. Plaintiffs are represented by SG, a leading firm in navigating complex class actions across the country. *See* Faircloth Decl., Exhibit 2, SG Firm Resume – Class Action. Counsel investigated the claims, filed a detailed, comprehensive Complaint based on considerable research, obtained targeted data necessary to model class-wide damages, and participated in arm's-length mediation overseen by an experienced neutral in complex class action, Jill R. Sperber, Esq., of Sperber Dispute Resolution. *See* Faircloth Decl., ¶¶ 14–15, 17. SG's Class Action team has decades of experience litigating class actions, including complex business litigation, and an in-depth knowledge of the statutory and regulatory framework of the tobacco surcharge cases that have been filed over the last few years. *See id.*, ¶¶ 48-49; *see id.*, Exhibit A. Plaintiffs' counsel are experienced class action litigators familiar with the legal and factual issues involved in this action. *Id*. Thus, the adequacy requirements are satisfied under Rule 23(a)(4) and the Court should appoint SG as Class Counsel.

### 2. The Settlement Class Meets the Requirements for Certification Under Rule 23(b)

#### *a. The Settlement Class Should Be Certified Under Rule 23(b)(1)*

Certification under Rule 23(b)(1) is appropriate because Plaintiffs assert ERISA fiduciary breach and statutory claims on behalf of the Plan that challenge Defendant's uniform administration of its tobacco surcharge and wellness program. Plaintiffs seek Plan-wide equitable and monetary relief under ERISA, §§ 409 and 502(a)(2) and appropriate equitable relief under § 502(a)(3), including disgorgement and restoration of losses attributable to surcharge proceeds retained in Defendant's general assets. Compl., ¶¶ 64–98. These claims and the associated relief are inherently Plan-centric and, if adjudicated separately, would expose Defendant to incompatible

standards of conduct. This is a classic Rule 23(b)(1)(A) case. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Separate actions by thousands of the approximately 25,500 participants could yield divergent rulings on whether Defendant's tobacco surcharge and wellness program comply with ERISA, § 702 and PHSA, § 2705, whether the "reasonable alternative standard" and "full reward" requirements were satisfied, whether the Plan's notice regime meets regulatory mandates, and whether surcharge proceeds constitute plan assets subject to fiduciary duties. Conflicting decisions would force Defendant to choose between treating similarly situated participants uniformly under the Plan and obeying inconsistent judicial directives, precisely the risk Rule 23(b)(1)(A) is designed to prevent. *See McAlister v. Metro. Life Ins. Co.*, 2023 U.S. Dist. LEXIS 158560, at *25–26 (S.D.N.Y. Sept. 7, 2023) (recognizing the danger of incompatible standards when plan-wide benefits or calculations are at issue) (quoting *Caufield v. Colgate-Palmolive Co.*, 2017 U.S. Dist. LEXIS 118022, at *15 (S.D.N.Y. July 27, 2017) ("If two courts came to different conclusions as to how the proposed class members' [Plan] benefits must be calculated, Defendants would face a conflict between treating Plan participants alike and complying with each separate court order.")).

Certification is also proper under Rule 23(b)(1)(B). Plaintiffs' fiduciary breach theories and request for Plan-wide relief mean that adjudication in one case would, as a practical matter, determine the rights of absent Plan participants and substantially impair their ability to protect their interests. *See* Fed. R. Civ. P. 23(b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Courts have certified ERISA classes under Rule 23(b)(1) where the defendant's conduct and the requested relief apply uniformly across the plan. *Hans v. Tharaldson*, No. 3:05-cv-115, 2010 U.S. Dist. LEXIS 45927, at *26 (D.N.D. May 7, 2010) ("[B]reach of fiduciary duty claims under ERISA, § 502(a)(2) 'are paradigmatic examples of claims appropriate for certification as a Rule

23(b)(1) class.'") (citing *In re Schering Plough ERISA Litigation*, 589 F.3d 585, 604 (3d Cir. 2009)); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 105–06 (D. Mass. 2010) ("Given that the present case involves an ERISA, § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty … Rule 23(b)(1)(B) is clearly satisfied.").

In sum, because this ERISA action seeks plan-wide relief based on Defendant's uniform conduct and would otherwise risk incompatible standards and practical impairment of absent participants' rights, certification under Rule 23(b)(1) is warranted and should be granted for settlement purposes.

### C. *The Proposed Notice Plan Should Be Approved*

For class action settlements, the Court must "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). To satisfy due process, class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Settlement provides a robust notice program that satisfies Rule 23(e)(1) and due process in both form and substance. No later than twenty (20) business days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Class Member List sufficient to effectuate notice and distribution. SA, § II.3.a. No later than sixty (60) calendar days before the Final Approval Hearing, the Court-approved Settlement Administrator will send the Settlement Notice via U.S. Mail to each Class Member identified on the Class Member List at their last known address. SA, § II.4; Exhibit C. If any Settlement Notice is returned, the Settlement Administrator will use commercially reasonable efforts to locate the Class Member and re-send the Settlement Notice. SA, § II.4.a. The Parties will also confer with the Settlement

Administrator regarding reasonable supplemental methods of notice, including additional mailings and electronic communications, to further ensure that Class Members receive notice of the Settlement and their entitlement to payment. Faircloth Decl. ¶ 50.

The Settlement Notice also directs Class Members to a dedicated Settlement Website, where the Settlement Agreement, the Complaint, and additional information about the Action and the Settlement will be available, and where any changes to the date, time, or location of the Final Approval Hearing will be posted. *See* SA, Exhibit A. Class Members may also obtain information by calling a toll-free number or by contacting the Settlement Administrator or Class Counsel. *Id.*

The Notice itself is clear, informative, and comprehensive. *See* SA, Exhibit A. It explains the nature of the Action, the claims and defenses, the terms and effects of the Settlement, the class definition, and the binding releases upon final approval. *Id.* It confirms that Defendant will pay $3,175,000 into a Settlement Fund, and that the Net Settlement Amount will be distributed by check to Class Members in proportion to the net tobacco surcharges each paid during the Class Period, without the need for claim forms. *Id.* The Notice further explains that eligible Class Members with a positive surcharge balance will receive a minimum payment of $10, before applicable tax withholdings, subject to the availability of sufficient settlement funds. *Id.* It discloses Class Counsel's request for attorneys' fees, costs, and expenses not to exceed 33.3% of the Gross Settlement Amount (maximum $1,057,275), proposed Case Contribution Awards of up to $7,500 for each Class Representative, and that Administrative Expenses and the costs of an Independent Fiduciary will be paid from the fund, all subject to Court approval. *Id.*

The Notice sets forth the date, time, and manner of the Final Approval Hearing and explains objection procedures. SA, Exhibit A. Written objections must be filed with the Court and served on counsel at least fourteen (14) calendar days before the Final Approval Hearing and must include

the objector's name, address, telephone number, and physical signature, the reasons for the objection, and any legal support or evidence the objector wishes to bring to the Court's attention. *Id.*; SA, Exhibit C. Class Members who timely object may also appear at the hearing personally or through counsel by serving a Notice of Intention to Appear, though appearance is not required for an objection to be considered. *Id*. Because payments will be automatically issued by checks to Class Members' last known addresses once the Settlement is final, no claim forms are required, and any funds remaining after the 200-day check-cashing period will be distributed to a *cy pres* recipient. SA, § III.7; Exhibit B, Plan of Allocation §§ II.D, II.G.

In addition, Defendant will serve the CAFA Notice on appropriate federal and state officials no later than ten (10) calendar days after Class Counsel files the motion for preliminary approval, and the Settlement requires Independent Fiduciary review, adding further assurance of fairness and procedural regularity. *See* SA, §§ I.6, II.5, II.5.e, VI.1.

These procedures ensure individual mailed notice to every Class Member, supported by a public Settlement Website containing all key filings and information. Courts regularly approve comparable programs combining first-class mail and web notice for Rule 23 settlements. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (stating that individualized notice by mail is the best notice practicable in a class action context). Accordingly, the Court should approve the form and manner of Notice set forth in the Settlement Agreement and authorize its dissemination to the Class.

### D. The Court Should Schedule A Final Approval Hearing

The last step in the Settlement approval process is a Final Approval Hearing during which the Court will make its final evaluation of the Settlement based on, among other things, Class Members' responses to the Notice. Consistent with SA, § II.2.a, Plaintiffs and proposed Class

Counsel request that the Court schedule the Final Approval Hearing at least one hundred and twenty (120) days after entry of the Preliminary Approval Order, which will also allow the Independent Fiduciary time to complete its review under PTE 2003-39. SA, §§ II.2.a, II.5.

## V. CONCLUSION

The proposed Settlement is within the range of reasonableness and readily meets the standards for preliminary approval. Accordingly, Plaintiffs respectfully request this Honorable Court enter an order:

(i) preliminarily approving the Settlement and provisionally certifying the Settlement Class in accordance with the proposed Preliminary Approval Order;

(ii) approving the Notice Program and directing that Notice be distributed to the Settlement Class Members in accordance with the Notice Program;

(iii) approving the procedures for distribution and directing the Settlement Administrator to administer the Notice Program and Settlement in accordance with the provisions of the Settlement Agreement;

(iv) appointing Plaintiffs Michael Barker and George Cross as Class Representatives;

(v) appointing Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP as Class Counsel;

(vi) scheduling a Final Approval Hearing to consider entry of the Final Approval Order and Judgment and the request for Attorneys' Fees, Costs, and Case Contribution Awards, to be held no sooner than 120 days after entry of the Preliminary Approval Order; and

(vii) awarding all such other relief as the Court deems just and proper.

Dated: November 10, 2026 Respectfully submitted,

**SIRI & GLIMSTAD LLP**

*/s/ Oren Faircloth*
Oren Faircloth (*pro hac vice*)
100 Pearl Street, 14th Floor – #16946876
Hartford, CT 06103
Tel: (212) 532-1091
E: ofaircloth@sirillp.com

William H. Payne, IV (*pro hac vice*)
8 Campus Drive, Suite 105 PMB #101
Parsippany, New Jersey 07054
Tel: (212) 532-1091
E: wpayne@sirillp.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings
Arkansas Bar No. 2006306
500 President Clinton Avenue, Ste 110
Little Rock, Arkansas 72201
Tel: (501) 255-8569
E: chris@jefirm.com

*Attorneys for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 10th day of November, 2026, I caused to be filed a true and correct copy of the foregoing document with the clerk of court using CM/ECF system, which will send notification of such filing to all counsel of record.

*<u>/s/ Oren Faircloth</u>*
Oren Faircloth