**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

MICHAEL BARKER and GEORGE CROSS on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

J.B. HUNT TRANSPORT SERVICES, INC.,

Defendant.

Case No. 5:26-cv-05128-DCF

**DECLARATION OF OREN FAIRCLOTH**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Oren Faircloth, hereby declare:

1. I am an attorney admitted and licensed to practice law in Connecticut. I am licensed to practice before this Court under *pro hac vice* status. I am an attorney at Siri & Glimstad LLP ("Siri"), a plaintiffs' class action law firm that litigates a significant volume of ERISA cases. I serve, together with Christopher D. Jennings and William H. Payne, IV, as counsel of record for Plaintiffs in the above-captioned case.

2. I am one of the proposed Class Counsel under the proposed Settlement with J.B. Hunt Transport Services, Inc. ("Defendant") being presented to the Court for Preliminary Approval. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth herein and could testify competently as to them if called upon to do so.

3. Filed concurrently herewith as Exhibit 1 is a true and correct copy of the Class Action Settlement Agreement entered into by Plaintiffs, on behalf of themselves and the proposed

Settlement Class, and Defendant. The Parties' proposed Notice is Exhibit A to the Settlement Agreement. The Parties' proposed Plan of Allocation is Exhibit B to the Settlement Agreement. The Parties' proposed Preliminary Approval Order is Exhibit C to the Settlement Agreement. The Parties' proposed Final Approval Order is Exhibit D to the Settlement Agreement.

## I. Background and Procedural History

4. This Action arises out of Plaintiffs' claims that Defendant unlawfully imposed a discriminatory tobacco surcharge of $15 weekly withheld from participants' paychecks, or roughly $780 annually, on participants in the J.B. Hunt Transport, Inc. Employee Benefits Plan (the "Plan") and their covered dependents who use tobacco, without administering a wellness program that complied with ERISA's full reward, notice, and reasonableness requirements. Specifically, Plaintiffs allege that Defendant's Wellness Program: (a) violated the full reward rule by not informing participants that they can avoid the tobacco-user surcharge. Plan materials, therefore, do not disclose whether participants who satisfy Defendant's tobacco cessation program standard during the Plan year will receive the full discount for that year as ERISA requires, *see* 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j)(3)(D); (b) fails to explain when or how the discount becomes effective following completion of the program; (c) omits contact information and the required statement that recommendations of a participant's personal physician will be accommodated in determining a reasonable alternative standard; (d) fails to clearly notify participants of all the avenues available to them to avoid the surcharge, even though it is a core Plan term that directly affects participants' premium contributions; and (e) failed to inform participants that they have a right to a physician-directed alternative as required under 45 C.F.R. § 146.121(f)(4)(v). Based on Defendant's data, the Settlement Class consists of approximately 25,500 individuals.

5. Plaintiffs filed their Class Action Complaint ("CAC") on June 3, 2026 (ECF No. 2). The Court entered its Scheduling Order on July 23, 2026 (ECF No. 16).

6. On August 5, 2026, the Parties filed their Joint Motion for Stay of all Deadlines (ECF No. 18), requesting a stay of all deadlines while the Parties continued to engage in good faith negotiations and participate in a mediation before Jill R. Sperber, Esq. of Sperber Dispute Resolution on September 2, 2026.

7. The Parties filed their Joint Status Report and Request for Extension of Stay on September 16, 2026 (ECF No. 20) pursuant to the Court's August 6, 2026, Order (ECF No. 19), informing the Court that the mediation was successful and that the Parties had reached an agreement in principle during the mediation. Thereafter, the Parties negotiated further over the material terms and worked extensively to reduce their agreement to a formal written Settlement Agreement, which is submitted herewith. The Parties requested an additional stay until November 10, 2026, for Plaintiffs to file this Motion for Preliminary Approval of Class Action Settlement.

## II. Investigation and Litigation Efforts

8. Class Counsel investigated Defendant's tobacco surcharge program, the Wellness Program's design and administration, and the governing Plan materials to evaluate Plaintiffs' class-wide claims, including the fiduciary-duty allegations.

9. Class Counsel analyzed and evaluated the viability of Plaintiffs' claims against Defendant, including claims concerning the full reward, notice, and reasonableness requirements for wellness programs and alleged breaches of fiduciary duty.

10. Class Counsel reviewed and analyzed applicable statutory and regulatory requirements under ERISA, including the full reward rule, the physician-accommodation notice requirement, the reasonableness requirement for wellness programs, and the Department of

Labor's wellness-program regulations.

11. Class Counsel reviewed and analyzed the Plan documents, Summary Plan Descriptions, the Benefits Guides addressing the tobacco surcharge, benefits enrollment materials, and Wellness Program materials to assess Defendant's compliance with ERISA and the alleged fiduciary breaches in administering the Wellness Program and using surcharge revenue.

12. Class Counsel prepared and filed the CAC and were prepared to litigate this Action to conclusion, including through discovery, class certification, summary judgment, trial, and any appeals.

13. The Parties engaged in extensive communications regarding the contours of a possible class-wide resolution. Class Counsel analyzed the factual and legal issues and prepared for mediation.

14. The Parties prepared for and participated in the all-day, in-person mediation before Jill R. Sperber, Esq. of Sperber Dispute Resolution on September 2, 2026, during which they exchanged written and oral proposals, including argument and analysis of the Parties' respective positions. With the Mediator's assistance, the Parties reached an agreement in principle on a class-wide settlement.

15. Our efforts on behalf of the proposed Settlement Class include (as noted in part above):

a. investigating Defendant's tobacco surcharge program and the design and administration of the Wellness Program;

b. reviewing the governing Plan documents, summary plan descriptions, benefits enrollment materials, and relevant ERISA requirements;

c. preparing and filing the CAC;

d. analyzing and tracking the legal arguments and defenses raised by Defendant;

e. preparing for and participating in the all-day, in-person mediation before Jill R. Sperber, Esq. of Sperber Dispute Resolution on September 2, 2026;

f. negotiating and documenting the class-wide Settlement; and

g. achieving a favorable Settlement on behalf of the Settlement Class.

16. Plaintiffs Michael Barker and George Cross have each been actively engaged in this matter. Each provided pertinent information and documents to counsel regarding their experiences with Defendant's tobacco surcharge program and Wellness Program, as well as their concerns regarding Defendant's alleged ERISA violations. Plaintiffs stayed informed about the case, worked with counsel to prepare and review the CAC and other pleadings, were available for and assisted in the mediation, participated in settlement discussions, and communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement, which they agreed to only after understanding the proposed relief and litigation risks.

**III. The Settlement**

17. Class Counsel participated in extensive settlement discussions, including the mediation before Jill R. Sperber, Esq. of Sperber Dispute Resolution on September 2, 2026, achieving a Settlement for the Settlement Class and negotiating a comprehensive Agreement that includes a robust Notice Program, well-crafted Notice, and an automatic distribution process for Settlement Class Members.

18. The Settlement provides for Defendant's commitment to fund a non-reversionary Gross Settlement Amount of $3,175,000.

19. The Gross Settlement Amount will pay: (a) Settlement Class Member Benefits on a pro rata basis based on the net amount of tobacco surcharges paid during the Class Period, less

any refunds applied to those payments; (b) Administrative Expenses, including Settlement Administration Costs and Independent Fiduciary Fees not to exceed $25,000; (c) Taxes and a contingency reserve; (d) Case Contribution Awards to the Class Representatives awarded by the Court; and (e) any Attorneys' Fees and Costs awarded by the Court to Class Counsel. After these deductions, the Net Settlement Amount will be distributed to Settlement Class Members.

20. The Plan of Allocation also provides that each Class Member with a positive Balance will receive a minimum payment of $10.00, before applicable tax withholdings, provided sufficient settlement funds are available. SA, Ex. B, § II.C.4. Where a Class Member's proportional allocation would otherwise be less than $10.00, the Settlement Administrator will increase that payment to $10.00 and proportionately adjust the remaining allocations so that total distributions do not exceed the Net Settlement Amount. In my opinion, this provision further supports the fairness of the Plan of Allocation by ensuring that Class Members who paid relatively small amounts in tobacco surcharges nevertheless receive a meaningful monetary recovery, while preserving the proportional distribution of settlement proceeds. Settlement Class Members are not required to submit claim forms to receive benefits under the Settlement. Distributions will occur automatically using Defendant's data, and payments will be made by check, valid for 200 calendar days from issuance. Amounts allocated to Class Members who cannot be located, who otherwise cannot receive their payments, or who fail to cash their checks within the 200-day period will remain in the Qualified Settlement Fund.

21. No sooner than twenty (20) calendar days after the expiration of the 200-day period applicable to the last settlement check issued, any funds remaining in the Qualified Settlement Fund, after payment of all applicable Administrative Expenses, Taxes, and other amounts payable under the Settlement Agreement, will be distributed as a *cy pres* distribution to a recipient selected

by Defendant, subject to Class Counsel's approval, which shall not be unreasonably withheld; if the Parties cannot agree, the Court will select the recipient. No portion of the Gross Settlement Amount will revert to Defendant.

22. Class Counsel will seek Case Contribution Awards for Michael Barker and George Cross, each not to exceed $7,500, for a maximum of $15,000 collectively for the two Class Representatives, subject to Court approval.

23. The Case Contribution Awards will compensate the Class Representatives for their time and effort and for the risks they assumed in prosecuting the Action, including the time and effort they spent reviewing and approving the CAC and the terms of the Settlement.

24. Class Counsel have not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Class Counsel have undertaken representation at their own expense, with compensation contingent on providing a benefit to Plaintiffs and Settlement Class Members. Class Counsel may request Attorneys' Fees and Costs, inclusive of fees, costs, and expenses, not to exceed 33.3% of the Gross Settlement Amount (approximately $1,057,275 (33.3% of $3,175,000)), by separate motion no later than forty-five (45) calendar days before the Final Approval Hearing. Such an award is subject to this Court's approval and will serve to compensate for the time, risk, and expense Plaintiffs' counsel incurred pursuing claims for the Settlement Class.

**IV. Risks of Continued Litigation**

25. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.

26. Class Counsel believe the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial.

27. Class Counsel are pragmatic about the risks and challenges of litigation.

28. The risks and challenges of litigation could have resulted in the unsuccessful prosecution of these claims at trial and on appeal—resulting in zero benefit to the Settlement Class. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached after mediation outweighs the gamble of continued litigation.

29. The claims and defenses in this Action are complex as shown by the record of cases involving ERISA wellness-program, tobacco-surcharge, and fiduciary-duty issues. There is no doubt that continued litigation would be difficult, expensive, and time consuming.

30. Given that Defendant denies liability, believes that it acted in good faith and in compliance with the law, and maintains that it would prevail on motion practice and on the merits at trial, continued litigation would mean a long wait for Class Members, with no promise of recovery when the matter is finally concluded.

31. Whether the Action would have proceeded as a mandatory, non-opt-out class under Rule 23(b)(1) is also relevant in assessing the fairness of the Settlement. The Court had not yet certified a class at the time the Agreement was executed, and it was uncertain whether Plaintiffs could obtain certification after contested motion practice and further litigation.

32. In Class Counsel's experience and informed judgment, the Settlement represents an excellent result, providing substantial monetary relief to Settlement Class Members without further delay and in light of the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

**V. Recommendation of Counsel**

33. Based on thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Class and the September 2, 2026 mediation, we

believe the proposed Settlement is in the best interest of the Settlement Class. Our extensive factual and legal investigation informed us about the strengths and weaknesses of Plaintiffs' claims as well as Defendant's potential defenses and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

34. Class Counsel and Defendant's counsel are all attorneys who are familiar with class action litigation related to ERISA wellness programs; particularly experienced in the litigation, certification, trial, and settlement of class actions, including ERISA cases; and knowledgeable of the legal and factual issues at the center of this Action. Filed concurrently herewith as Exhibit 2 is a copy of Siri's Firm Resume – Class Action. Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP have substantial experience litigating complex ERISA and class actions nationwide—including claims under ERISA § 702 and PHSA § 2705 addressing health-contingent wellness programs—and have vigorously prosecuted this case.[1] Oren Faircloth is currently serving as counsel in several other ERISA lawsuits.

35. We recognize that despite our belief in the strength of Plaintiffs' claims and Plaintiffs' and the proposed Settlement Class's ability to secure a judgment and award of damages, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

---

[1]*See Fisher v. GardaWorld Cash Serv. Inc.*, No. 9:26-cv-80594 (S.D. Fla.); *Waggoner v. Carle Found.*, No. 2:24-cv-2217, ECF No. 27 (C.D. Ill. Sept. 16, 2025); *Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 2:24-cv-02749, 2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sept. 26, 2025); *Chirinian v. Travelers*, 0:24-cv-03956 (D. Minn.); *Greene v. Progressive*, 1:24-cv-01890 (N.D. Ohio); *Wilson v. Whole Foods*, 1:25-cv-00085 (W.D. Tex.); *Brewster v. Allied Universal*, 1:25-cv-00085 (C.D. Cal.); *Roman v. Walgreen*, 1:25-cv-01504 (N.D. Ill.); *Knight v. LHC*, 6:25-cv-00263 (W.D. La.); *Spence v. Casey's General Store*, 4:25-cv-00113 (S.D. Iowa); *Leslie v. Rentokil*, 5:25-cv-01423 (E.D. Pa.); *Simpson v. Inspire*, 1:25-cv-02058 (N.D. Ga.); *Williams v. Bally's*, 1:25-cv-00147 (D.R.I.); *Schultz v. Glens Falls*, 1:25-cv-00581 (N.D.N.Y.); *Janosky v. USPI*, 2:25-cv-00068 (N.D. Tex.); *Pinckney v. Nordstrom*, 2:25-cv-01396 (W.D. Wash.).

36. We also are mindful that absent the proposed Settlement, Defendant's defenses could deprive Plaintiffs and the proposed Settlement Class of any potential relief whatsoever. Defendant would continue to challenge liability, oppose class certification vigorously, and prepare a competent defense at trial. Defendant could also appeal any adverse decision on the merits or challenge the award of damages.

37. The Parties have concluded that the benefits of settlement in this Action outweigh the risks and uncertainties of continued litigation, including class certification discovery and proceedings under Rule 23(b)(1), merits discovery, pretrial motion practice, trial, and likely appellate review.

38. The Parties did not discuss attorneys' fees or any Case Contribution Award until after agreeing on the material terms of the Settlement, including the Settlement Class definition, Settlement Class Benefits, and the Releases.

39. The Settlement was reached in the absence of collusion, and is the product of good faith, informed, and arm's-length negotiations by competent counsel. There are no additional agreements that require identification or examination under Rule 23(e)(3).

40. Plaintiffs' counsel have vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval.

41. In our professional opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable and in the best interests of the Settlement Class, and we respectfully recommend it to the Court for its preliminary approval. Plaintiffs' counsel have conferred with Michael Barker and George Cross, each of whom supports the proposed Settlement.

**VI. Class Treatment is Appropriate**

42. For Settlement purposes, the Parties have agreed to certify a mandatory, non-opt-

out Settlement Class under Rule 23(b)(1) defined as: "All individuals meeting the following criteria: (a) the individual resides in the United States; and (b) paid a tobacco surcharge in connection with their participation in the Plan from June 3, 2020, through the date of entry of the Preliminary Approval Order." *See* Settlement Agreement § I.8. Excluded from the Settlement Class are Defendant's named officers and directors, named fiduciaries of the Plan, counsel for the Parties, and any members of the federal judiciary assigned to this Action.

43. Either common legal questions or common fact questions are sufficient to establish commonality, and both are present here. Settlement Class Members share common, class-wide questions of whether Defendant unlawfully imposed a discriminatory tobacco surcharge without providing the full reward, without adequate notice of a reasonable alternative standard, and without a reasonably designed and administered Wellness Program, and whether Defendant breached its fiduciary duties in administering the Wellness Program and the surcharge revenue, all as required by ERISA. These questions arise from the same course of conduct and can be resolved on a class-wide basis.

44. Plaintiffs' claims are typical of those of the Class, as all stem from the same course of conduct—the imposition of tobacco surcharges without a compliant Wellness Program and the alleged breach of fiduciary duty in administering the Wellness Program and surcharge revenue. The Class Representatives challenge the same conduct and pursue the same legal theories as the Settlement Class Members, and any factual differences do not defeat typicality.

45. The Settlement Class satisfies Rule 23(b)(1) because Plaintiffs assert claims on behalf of the Plan as a whole under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Prosecution of separate actions by individual Settlement Class Members would create a risk of inconsistent or varying adjudications regarding whether Defendant's tobacco surcharge program and Wellness

Program complied with ERISA and regarding Defendant's alleged breaches of fiduciary duty in administering the Plan, which could establish incompatible standards of conduct for Defendant or impair other Class Members' ability to protect their interests. Accordingly, the Settlement Class is mandatory and non-opt-out.

46. Plaintiffs Michael Barker and George Cross are adequate Class Representatives. Each is fully committed to the responsibility of serving as a Class Representative, and each has interests aligned with the Settlement Class. Their claims are not antagonistic to or in conflict with the interests of the Settlement Class; they pursue the same legal theories challenging the same course of Defendant's conduct; and they seek remedies equally applicable and beneficial to their fellow Settlement Class Members.

**VII. Roles & Qualifications of Counsel**

47. During the course of this litigation, Siri & Glimstad LLP, through Oren Faircloth and William H. Payne, IV, and Jennings & Earley PLLC, through Christopher D. Jennings, worked tirelessly to obtain the excellent settlement result proposed here. Under the terms of the Settlement Agreement, Oren Faircloth and William H. Payne, IV of Siri & Glimstad LLP and Christopher D. Jennings of Jennings & Earley PLLC are proposed as designated Class Counsel. *See* Settlement Agreement § I.9.

48. As noted above, Oren Faircloth and William H. Payne, IV have significant experience in the litigation and settlement of national class actions, including numerous ERISA cases and health-plan nondiscrimination claims under ERISA § 702 and PHSA § 2705, many of which have obtained final approval. Christopher D. Jennings likewise has significant experience in the litigation of class actions. Thus, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel. Each proposed Class Counsel attorney has extensive

experience prosecuting class actions.

49. Class Counsel are qualified and competent, possess extensive knowledge of the applicable laws, and have experience prosecuting complex class actions in courts throughout the United States, including cases similar to this one, and have led in the recovery of substantial amounts for the classes they represented. The experience, resources, and knowledge Class Counsel bring to this Action are extensive and formidable. Class Counsel have devoted substantial time and resources to this Action, are qualified to represent the Settlement Class, and will, along with the Class Representatives, vigorously protect the interests of the Settlement Class.

**VIII. Settlement Administrator and Notice Program**

50. Class Counsel solicited and evaluated proposals from multiple settlement administrators before selecting Rust Consulting, Inc. ("Rust") as the Settlement Administrator. *See* Settlement Agreement § I.37. In its role, the Settlement Administrator will oversee the Notice Program, and Class Counsel will field inquiries from Settlement Class Members, coordinate with Rust to address questions regarding the Settlement, and monitor the administration process. No later than twenty (20) business days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator the Class Member List needed to identify the Settlement Class. No later than sixty (60) calendar days before the Final Approval Hearing, the Settlement Administrator will send the Settlement Notice to Class Members via U.S. Mail at their last known address and, if any Settlement Notice is returned, will use commercially reasonable efforts to locate the Class Member and re-send the Settlement Notice one additional time. The Settlement Notice directs Class Members to a Settlement Website where the Settlement Agreement, the Complaint, and additional information about the Settlement will be available. Class Members may also obtain information by calling a toll-free number or by contacting the Settlement Administrator or Class

Counsel. The Parties also intend to confer with the Settlement Administrator regarding additional reasonable methods of supplementing notice, including follow-up mailings and electronic communications, to maximize the likelihood that Class Members receive notice of the Settlement and obtain the payments to which they are entitled.

51. The Notice Program constitutes sufficient notice to all persons entitled to notice. The Notice Program satisfies all applicable requirements of law and due process and is reasonably calculated to apprise Settlement Class Members of the Settlement and their rights.

52. The Notice will properly inform Settlement Class Members of the Settlement's substantive terms, the proposed Attorneys' Fees and Costs and Case Contribution Awards, and the date, time, and place of the Final Approval Hearing. Because this is a non-opt-out settlement under Rule 23(b)(1), the Settlement Notice will not include an exclusion procedure. Settlement Class Members may object in writing no later than fourteen (14) calendar days before the Final Approval Hearing and, if they timely object and serve a Notice of Intention to Appear, may appear at the Final Approval Hearing. In addition, because the Settlement resolves claims brought on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Defendant will select and retain an Independent Fiduciary to review the Settlement on behalf of the Plan in accordance with Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632 ("PTE 2003-39").

53. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 10th day of November, 2026, in West Hartford, Connecticut.

*/s/ Oren Faircloth*
Oren Faircloth